ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

## OCTOBER TERM, 1914.

*(Continued from Volume 185.)*

JOHN B. OWEN, Appellant, v. HERBERT S HADLEY et al., Respondents.

St. Louis Court of Appeals, December 8, 1914.

1. WORK AND LABOR: Services Performed for Political Committee: Compensation: Implied Contract. In an action against the members of a political committee, the contestees in an election contest and certain other members of the party, for services rendered for the committee preliminary to the contest, where it did not appear that plaintiff intended, at the time the services were rendered, to charge therefor, and the character of the services and the circumstances under which they were rendered were such as to lead defendants to believe that plaintiff was merely giving his assistance as a matter of party service without expectation or hope of compensation, *held* that plaintiff was not entitled to recover.

2. PRINCIPAL AND AGENT: Services Performed for Political Committee: Authority of Agent. Where the chairman of the State committee of a political party retained an attorney to act

Owen v. Hadley.

in impending election contest proceedings, without authority from the committee, and the attorney employed plaintiff to render services in the contest, the individual members of the committee were not liable for plaintiff's services.

3. ——————: ——————: ——————. Where the chairman of the State committee of a political party, without authority from the committee or the contestees, retained an attorney to act in impending election contest proceedings, and the attorney employed plaintiff to render certain services in connection with such contest, without undertaking to bind any one else, limiting his own responsibility to a certain amount per week, such contract bound no one but the attorney who made it.

4. WORK AND LABOR: Services Performed for Political Committee: Compensation: Implied Contract. In an action against the members of a political committee, the contestees in an election contest and certain other members of the party, for services rendered in connection with the contest, where it was shown that the chairman of the committee retained an attorney to act in the contest and the latter employed plaintiff, without undertaking to bind the chairman or the other parties defendant, *held* that the chairman and the other members of the party who were sued were not liable on the theory that one becomes personally liable, who, without authority, assumes to act for another and procures the rendition of valuable services for him, since neither of such defendants procured the rendition of the services for which plaintiff sued.

5. ——————: Express Contract: Right to Recover on Quantum Meruit. Where an existing express contract has been fully performed by plaintiff, and nothing remains to be done except payment by defendant, plaintiff need not declare on the express contract, but may proceed on a *quantum meruit* to recover the reasonable value of the services, but, in such event, the recovery is limited to the reasonable value of the services, not exceeding the contract price.

6. ——————: ——————: ——————: Evidence. In an action on a *quantum meruit* for services rendered under an express contract, the contract is admissible in evidence, and the rights of the parties are to be determined in accordance therewith.

7. ——————: Implied Contract: Credit Given Third Person. One who is benefited by work performed is not liable therefor if credit is given solely to another at whose request the work is performed.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

Owen v. Hadley.

AFFIRMED.

*S. P. Bond* for appellant.

(1) The court erred in refusing to submit plaintiff's right of recovery as in *quantum meruit*. The petition is merely one of an account. Such being true, it was competent for plaintiff to recover in *quantum meruit* for reasonable value as well as on a special contract, if the evidence revealed one. Swift v. Johnson, 158 S. W. 96; Johnson v. Loomis & Snively, 50 Mo. App. 142; Columbia Bank v. Patterson, 7 Crouch, 299; Londregon v. Crawley, 12 Conn. 561; Holmes v. Stummel, 24 Ill. 370. (2) The court erred in sustaining the demurrer to the evidence as to the defendants and contestees, John C. Brown, John Kennish, Wm. P. Evans and Frank A. Wightman. Where services are performed by one for another, either with or without the latter's consent and knowledge, and he knowingly accepts and avails himself of these services, the general rule is that the law will imply a promise to pay a fair and reasonable compensation therefor. Plaintiff may either sue for breach of contract and recover damages, or he may abandon the contract and recover on the *quantum meruit*. Franklin Motor Car Co. v. Kast, 157 S. W. 84; Hiemenz v. Goerger, 51 Mo. App. 586; Painter v. Ritchey, 43 Mo. App. 111; Holmes v. Board of Trade, 81 Mo. 137; Thomas v. Walnut Land etc., Co., 43 Mo. App. 653; Wagner v. Edison Electric Ill., 177 Mo., 44; O'Brien v. Boiler Co., 154 Mo. App. 183; Wagner v. Illuminating Co., 141 Mo. App. 51; Allen v. Richmond College, 41 Mo. 302; Stone v. Union Trust Co., 150 Mo. App. 331. (3) The court erred in sustaining the demurrer to the evidence as to each of the defendants, Governor Hadley, Mr. Morris and Judge Spencer. Where one procures services to be rendered for the benefit of a third person, without authority from or subsequent ratification by the

latter, he will be liable to the party performing the services for their reasonable value. Ludlum v. Couch, 10 N. Y. App. Div. 603. He will be liable if it be shown that the work, though done for another, was performed at his request and on his credit. Clark v. Roop, 15 Ark. 172; Scott v. Messick, 4 T. B. Mon. 535. (4) If the contract has been completely executed, the plaintiff may recover as on an implied contract, under an *indebitatus assumpsit*, the price of his services, but the contract must regulate the amount of his recovery. Columbia Bank v. Patterson, 7 Crouch 299; Londregon v. Crawley, 12 Conn. 561; Holmes v. Stummel, 24 Ill. 370; Swift v. Johnson, 158 S. W. 96. (5) Where services are rendered under a mutual mistake of the parties as to the price to be paid therefor, the law rejects the understanding of each party and awards what the services are reasonably worth. The same rule obtains where an agent is employed to contract for work, and in good faith and with reasonable care and diligence makes the contract, although such reasonable compensation exceeds the sum which the agent was authorized to promise. Turner v. Webster, 24 Kan. 38, 40, 41; Dwight v. Johnson, 158 S. W. 96. (6) The court erred in sustaining the demurrer to the evidence as to the defendant Chas. D. Morris. If one performs services for another through mistake of fact through the fraud or concealment of another to render valuable services for the latter, he will be permitted to recover the reasonable value of the services, regardless of any original intention to charge therefor. Boardman v. Ward, 40 Minn. 399; Hickam v. Hickam, 46 Mo. App. 497; Higgins v. Breen, 9 Mo. 497; Rickard v. Stanton, 16 Wend. 20; Robbins v. Potter, 11 Allen 588.

*Spencer & Donnell, Lon O. Hocker* and *Wm. Zachritz* for respondents.

(1) The services which Mr. Owen claims to have rendered in the first two items of his bill were, accord-

ing to his own testimony, before he was engaged to do any work and, according to his admission, entirely gratitous. (2) In any event, whatever Mr. Owen's services may have been worth, he cannot recover on a *quantum meruit* more than the agreed amount for which he was to render them. Kick v. Doerste, 45 Mo. App. 139; 3 Elliott on Contracts, sec. 2150. (3) Services which may have been for the benefit of a third party do not create any liability upon such third party for payment, unless the employment was authorized by said third party, or unless the circumstances were such as to create an implied promise on the part of said third party to pay. This implied promise can never be presumed when the services are rendered under a distinct agreement with others both as to the method of payment and amount of compensation entirely independent of such third party.

ALLEN, J.—Plaintiff's action is against thirty-nine defendants, and proceeds as in *indebitatus assumpsit* for the recovery of $1246.66, the balance claimed to be due for services rendered in connection with certain election contests. Plaintiff suffered a nonsuit below, and, after unsuccessfully moving to have the same set aside, appealed to this court.

The services in question were rendered by plaintiff in and concerning the election contests which were commenced in the Supreme Court of this State on or about December 17, 1910, involving the offices of Judge of the Supreme Court, Superintendent of Public Schools, and Railroad and Warehouse Commissioner. In November, 1910, almost immediately following the general election of that year, it appeared that contest proceedings would probably be instituted by the defeated (Democratic) candidates for the offices above mentioned. Plaintiff, a resident of the city of St. Louis, had for many years been an active political worker in the Republican Party, had had much experience in po-

litical affairs, and had rendered services in connection with other election contests. Shortly after the general election in 1910, it appears that an informal meeting or conference was held at the Jefferson Hotel, in the city of St. Louis, at which were present the following defendants, viz.: Hon. Herbert S. Hadley, then governor of the State, Judge John Kennish, Judge John C. Brown, Prof. Wm. P. Evans, and Mr. Frank A. Wightman, who were the contestees in the contest proceedings afterwards instituted, and Mr. Chas. D. Morris, then Chairman of the Republican State Committee. It seems that at this meeting the proposed contests were discussed, and plans for raising money therefor were considered. Following the conference, Mr. Morris, assuming to act for the State Committee, but without having been authorized by the Committee so to do, employed Ex-Judge Selden P. Spencer, one of the defendants, and Lon O. Hocker, Esq., as counsel in connection with the contemplated contests.

Plaintiff testified that just prior to the day upon which the canvassing of the election returns was to begin, Mr. Morris sent for him, and that he, in company with Mr. Morris, went to Jefferson City, where he conferred with Gov. Hadley, and for three days was present at the office of the Secretaary of State, in connection with the canvassing of the returns, to "keep track of the returns and look for any irregularities that might happen that would be detrimental to the Republican Party." Plaintiff stated that he then returned to the city of St. Louis, and later, in response to a telephone call from Judge Kennish, which, he says, he answered in Judge Spencer's office, in the latter's absence, he, Judge Spencer and Mr. Hocker went to Jefferson City; that as the result of conferences at Jefferson City he went to certain other points in the State, and then reported to Gov. Hadley, who directed him to report to Judge Spencer at St. Louis; and that on December 6, 1910, he reported to Judge Spencer, when

an oral agreement was made with the latter regarding plaintiff's employment, and his compensation. Plaintiff says that he told Judge Spencer that his services were worth $100 per week; but that Judge Spencer said: "You are worth $100 a week, but, unfortunately, the State Committee has placed in my hands a very small sum of money, so small that I will not be personally responsible for more than $50 a week to you." And that he (plaintiff) then said that he would accept $50 per week "on account" with the understanding that he was to have the additional $50 per week "whenever the State Committee was in funds."

When asked by Judge Spencer, on cross-examination, to state again his understanding of this conversation plaintiff said: "That I was to receive $100 a week. You said that I was worth a $100 and that you would gladly pay it if you had it, but you said, unfortunately, the State Committee had placed in your hands a very small sum of money and that you could not consistently guarantee to pay more than $50 on account, with the understanding and agreement that I was to have the additional $50 when the State Committee was in funds." Q. "Was there anything said about my guarantee or responsibility in the matter?" A. "$50 a week." Q. "That the limit would be $50 a week?" A. "That was all you would guarantee at the time."

Plaintiff proceeded with the work and was engaged therein from December 6, 1910, the date of the agreement above mentioned, to May 13, 1911, during which time he was paid $50 per week. In his account, contained in the petition, he claims $100 for services rendered prior to December 6, 1911, and $50 per week additional thereafter to May 13, 1911, making a total of $1241.66.

The suit proceeds against Gov. Hadley, Judge Spencer, the four above mentioned contestees, Mr. Morris and all of the other members of the State Committee.

It is conceded here that no case was made against any of the individual members of the State Committee other than Mr. Morris, its Chairman. It is contended, however, that the court erred in sustaining the demurrer to the evidence as to Gov. Hadley, Judge Spencer, Mr. Morris and the four contestees.

As to the services rendered prior to December 6, 1910, the date of the agreement with Judge Spencer, no express agreement appears on the part of anyone to compensate plaintiff therefor. Nor do we think that the law will imply any such promise from all of the facts and circumstances shown in evidence. It does not appear that plaintiff intended at the time to charge therefor, but the inference is irresistible that such was not the case. And if plaintiff harbored any such secret intention, the character of the services and the circumstances under which they were rendered, were such as to lead reasonable men, in the position of the other parties immediately concerned, to believe that they were rendered gratuitously; that plaintiff was assisting in this preliminary work as a matter of party service, without expectation or hope of immediate reward, as were other active members of his political party. His expenses were paid at the time, and there is no evidence of any word or act on his part indicating that he expected compensation; on the other hand Gov. Hadley, called by plaintiff as a witness, testified that plaintiff said that he was rendering such services without charge. And it seems quite clear that those defendants with whom plaintiff was associated in such work had no reason to believe that they would be expected to compensate plaintiff therefor. We have no hesitation in saying that there could be no recovery upon these items of the account. [See Wagner v. Illuminating Co., 141 Mo. App. l. c. 72, 73, 121 S. W. 329.]

The services rendered after December 6, 1910, were rendered under the agreement made by plaintiff with Judge Spencer. This, as plaintiff himself

says, was the only agreement had respecting his compensation. At the trial below it was admitted by defendants that Judge Spencer was acting at the time for the State Committee. The evidence is that he was retained by Mr. Morris, the Chairman of the Committee, without any authority therefor at any time given by the Committee itself. It is clear that this could not bind the individual members of the Committee; and such is conceded. Nor does it appear that this agreement could be binding upon any of the other defendants.

The evidence is that Mr. Morris, acting upon his own initiative, employed Judge Spencer and Mr. Hocker as counsel, and provided certain funds to defray the necessary expenses incident to the contests, thereby relieving the contestees of the burden of employing counsel and defending the title to their respective offices in these proceedings. In so doing it is to be inferred that Mr. Morris was acting under a sense of responsibility which he felt as Chairman of the State Committee, believing that his political party, through him as the head of its State organization, should assume this burden. He did not, however, contract directly with plaintiff, but this was left to Judge Spencer, one of the counsel employed in the matter. The latter's agreement did not undertake or purport to bind Mr. Morris personally, nor did Judge Spencer have any authority so to do. Neither did it purport to bind Gov. Hadley or any of the contestees; nor could it, in the absence of authority therefor. It quite clearly appears that Judge Spencer limited his own responsibility to $50 per week, which was paid; and that no further liability could attach to him in the premises. If Gov. Hadley and Mr. Morris are liable, such liability cannot grow out of the agreement made by Judge Spencer, but must arise from the acts of these defendants themselves in the premises.

It is contended that Gov. Hadley and Mr. Morris are liable, upon the theory that they procured the services to be rendered for the benefit of others without authority from the latter, whereby they became liable to plaintiff for the reasonable value of such services. We have no fault to find with the general proposition of law asserted in this connection, viz., that one will become personally liable, who, without authority, assumes to act for another, and procures the rendition of valuable services for the benefit of such other person. But the facts here are such, we think, as to leave no room for the application of this principle. Nothing appears which could bind either of these defendants personally as for having procured the rendition of the services by plaintiff without authority from those to be benefited thereby, or otherwise. All that is shown as to Gov. Hadley's connection with the ultimate employment of plaintiff for this work is that he told plaintiff, as the latter says, to report to Judge Spencer with whom plaintiff made his agreement. And, Mr. Morris appears to have left the matter of employing plaintiff entirely in Judge Spencer's hands, and to have done nothing whereby to bind himself personally in the premises. And the evidence is that while the services were being rendered Mr. Morris took charge of making the weekly payments to plaintiff and learned that plaintiff was claiming $100 per week, whereupon he told plaintiff that he would pay but $50 per week. We see nothing in the evidence to fasten personal liability upon either of these two defendants.

A further contention is that plaintiff is entitled to recover upon *quantum meruit* against the four above-mentioned contestees, upon the theory that where services are performed for one, either with or without his knowledge and consent, and he knowingly accepts and avails himself of such services, the law will imply a promise to pay a fair and reasonable compensation therefor. Again there is no fault to be found

with this as a broad general statement of the law; but appellant's contention in this regard omits to properly reckon with the special agreement made in the premises and under which the services were rendered. It is quite true that where an existing express contract has been fully performed by the plaintiff, and nothing remains to be done except the payment by defendant for the services rendered thereunder, plaintiff need not declare on the express contract, but may proceed upon *quantum meruit* for the recovery of the reasonable value of such services. In such event, however, plaintiff's recovery is limited to the contract price; that is to say, he may recover the reasonable value of his services not exceeding the contract price. The contract is admissible in evidence, and the rights of the parties are to be determined in accordance with it. This question is fully discussed in American Surety Co. v. Fruin-Bambrick Construction Co., 182 Mo. App. 667, 166 S. W. 333, in an opinion by Nortoni, J., where many authorities will be found cited.

In the instant case the special contract price limited plaintiff's compensation to $50 per week—except in so far as the agreement purported to bind the State Committee as such. It did not purport to and could not bind the contestees for the payment of additional compensation to plaintiff. And no recovery can be had against the contestees upon *quantum meruit* in the face of the express terms of the agreement made.

And furthermore, one who is benefited by work performed is not liable therefor if credit is given solely to another at whose request it is performed. [See 40 Cyc. p. 2838.] The evidence shows that plaintiff performed his services relying entirely upon Judge Spencer and the State Committee to compensate him therefor. And as to this it matters not that the agreement, under the circumstances, failed to obligate the individual members of the Committee, who had naught to do with the matter.

The action of the trial court in refusing to order the issuance of a subpoena *duces tecum,* upon plaintiff's application therefor, is assigned as error. Plaintiff sought to have such subpoena issued against Mr. Thomas K. Niedringhaus, then treasurer of the Republican State Committee, to compel the production of his books as such treasurer. Such application was made for the purpose of attempting to show that prior to the suit the Committee was "in funds," and had the means wherewith to pay plaintiff's claim. Touching this matter there was some conflict in the evidence as to whether plaintiff was relying upon the Committee to pay his claims when it had funds available, or in the event that sufficient funds were obtained by it for the purposes of the contests.

But this entire matter becomes immaterial in the view which we take of this case. It cannot matter whether the Committee had funds on hand for contest purposes, or otherwise, so far as concerns the personal liability of any of these defendants. Though there was evidence that, from the time of plaintiff's engagement to that of the trial, the Committee was always in debt to the extent of some thousands of dollars, if the question of the Committee's financial affairs were here involved, the propriety of the ruling of the trial court respecting the issuance of the subpoena upon the Committee's treasurer would demand our consideration. Under the circumstances, however, this ruling need not be reviewed.

Other questions are raised, but they are either not controlling or are disposed of by what we have said above.

The judgment must be affirmed; and it is so ordered. *Reynolds, P. J.,* concurs. *Nortoni, J.,* not sitting.